UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FRANCES ARLENE POTEMPA *et al.*,

Plaintiffs,

v.

HOWMEDICA OSTEONICS CORP. *et al.*,

Defendants.

CAUSE NO. 3:25cv843 DRL-SJF

OPINION AND ORDER

Frances Potempa underwent surgery in 2021 to repair her fractured hip with a Stryker Gamma3 nailing system. She says the product broke in 2022 and caused her injuries. She and her husband sued Howmedica Osteonics Corp. d/b/a Stryker Orthopaedics, Stryker Corporation, and Stryker Sales, LLC, which the court for ease today collectively calls Stryker. In an amended complaint, she alleges product liability theories under the Indiana Products Liability Act (IPLA) and warranty theories under the Indiana Uniform Commercial Code (UCC). Stryker requests dismissal of all claims under Rule 12(b)(6). The court grants the motion.

BACKGROUND

The court assumes the well-pleaded facts as true for the purpose of this motion. On August 31, 2021, doctors performed hip surgery on Ms. Potempa and implanted a Stryker Gamma3 nailing system manufactured by Stryker. She thereafter completed physical therapy and was walking and fully bearing weight without groin or hip pain for several months.

On January 20, 2022, Ms. Potempa felt pain in her groin and both legs, but x-rays showed no abnormality. The next day, she felt a pop in her right hip and fell. As alleged, it was discovered in the emergency room that one of the distal interlocks in the Gamma3 system failed, and the

head of the intramedullary nail was broken at the point of connection with the compression screw. Her revision surgery four days later removed the implant and installed new hardware with a bone graft. She incurred medical expenses and endured pain and suffering from her injuries, hospitalization, and treatment. Her husband (Jerome Potempa) lost consortium.

More than three years later, on August 29, 2025, the Potempas sued Stryker in LaPorte Superior Court, and Stryker removed the case here last fall. The Potempas amended their complaint on November 3, asserting five counts: strict liability (count 1) and manufacturing defect (count 2) under the IPLA, breach of express warranty (count 3), and breaches of the implied warranties of fitness for a particular purpose (count 4) and merchantability (count 5).[1] The parties have since fully briefed Stryker's motion to dismiss.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive this motion is "a context-

[1] In response to a court order, the parties verified the court's diversity jurisdiction in a joint jurisdictional statement.

specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

DISCUSSION

Stryker argues that the IPLA subsumes all product liability theories, including those sounding in warranty, that Indiana's two-year statute of limitations bars all such theories (and consortium), and that the amended complaint fails to state a claim regardless. The Potempas concede that their product liability claims under the IPLA are time-barred (counts 1 and 2) and that one implied warranty theory (fitness for a particular purpose in count 4) is barred for lack of privity. The parties debate the rest—namely, the ability to proceed on an express warranty theory and implied warranty of merchantability (counts 3 and 5), as well as a claim for lost consortium.

The IPLA governs all claims by a consumer against a manufacturer or seller for physical harm caused by its product—regardless of legal theory. Ind. Code § 34-20-1-1; *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 779-80 (Ind. 2004); *see also* Ind. Code § 34-6-2.1-163; *Brewer v. PACCAR, Inc.*, 124 N.E.3d 616, 621 (Ind. 2019); *Vaughn v. Daniels Co.*, 841 N.E.2d 1133, 1145 (Ind. 2006); *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1007-08 (7th Cir. 2020). A company who places "into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer . . . is subject to liability for physical harm caused by that product." Ind. Code § 34-20-2-1. The IPLA recognizes three types of defects that give rise to liability. "A product may be defective under the IPLA if it is defectively designed, if it has a manufacturing flaw, or if it lacks adequate warnings about dangers associated with its use." *Brewer*, 124 N.E.3d at 621; *see also Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018); *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

The IPLA at times subsumes warranty claims. *See, e.g., Palm v. Taurus Int'l Mfg., Inc.*, 2022 U.S. Dist. LEXIS 225898, 10-11 (N.D. Ind. Dec. 15, 2022); *Warner-Borkenstein v. Am. Med. Sys.*, 2020 U.S. Dist. LEXIS 11420, 9-10 (N.D. Ind. Jan. 21, 2020). This has been said for decades about those warranty claims that sound in tort based on product-caused personal injuries to a consumer. But not all warranty claims, for Indiana law recognizes a distinction between tort-based and contract-based warranty claims, a distinction drawn even after the common law adopted in the 1970s and the Indiana General Assembly eventually fashioned, in 1978 and as amended through 1998, the current form of the IPLA, Indiana's product liability doctrine based on the Restatement of Torts (Second) § 402A (1965). *See Ayr-Way Stores, Inc. v. Chitwood*, 300 N.E.2d 335, 339-40 (Ind. 1973); *Wright-Bachman, Inc. v. Hodnett*, 133 N.E.2d 713, 715-16 (Ind. 1956); *B&B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1018-19 (Ind. Ct. App. 1991); *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 577-584 (Ind. Ct. App. 1986); *Dagley v. Armstrong Rubber Co.*, 344 F.2d 245, 253 (7th Cir. 1965); *see, e.g., Piltch v. Ford Motor Co.*, 11 F. Supp.3d 884, 888 n.3 (N.D. Ind. 2014), *aff'd* 778 F.3d 628 (7th Cir. 2015); *Hathaway v. Cintas Corp. Servs.*, 903 F. Supp.2d 669, 673 (N.D. Ind. 2012); *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp.2d 1021, 1024-25 (N.D. Ind. 2011); *Zepik v. Ceeco Pool & Supply, Inc.*, 637 F. Supp. 444, 450 (N.D. Ind. 1986) (citing older cases).

Tort law and contract law remain separate today too, *see, e.g.*, *Hitachi Constr. Mach. Co. v. Amax Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000), particularly as the IPLA governs claims in tort that a defective product caused personal injury or damage to other property, whereas contract law (UCC) governs damage to the product or pure commercial loss from its failure to perform as warranted, *see Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005); *see also Fleetwood Enters. v. Progressive N. Ins.*, 749 N.E.2d 492, 495 (Ind. 2001) ("plaintiff may readily pursue

both a contract claim for damage to a product itself and a tort claim for personal injury or damage to other property under the [IPLA]"). The IPLA applies to a person who puts a defective product into the stream of commerce without always the need for a sale or for a consumer to be a buyer, but a warranty under the UCC inheres in the merchantable dealings of a sale (even without always the need for vertical privity).[2]

Stryker contends that the warranty theories here sound in tort such that they too are subsumed by the IPLA. Stryker observes that the amended complaint concerns Ms. Potempa's physical injuries from a product defect rather than seeks recovery for damage to the medical device or pure economic injury arising from any purchase of it. The Potempas counter that Indiana law permits warranty-based recovery for physical harm, citing *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1190 (Ind. Ct. App. 2020). In evaluating whether plaintiffs alleging physical injury from a medical device could proceed on an express warranty claim, *Bayer* recalled that the IPLA did not vitiate the UCC and that generally "a litigant [can] proceed on both tort-based and contract-based theories." *Id.* (quoting *Hitachi*, 737 N.E.2d at 465). Given that the Indiana Supreme Court had "never addressed whether the [IPLA] preempts warranty-based theories of recovery for physical harm," *id.* (quoting *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009)), *Bayer* held that an express warranty claim could proceed outside the IPLA, "particularly

[2] For more on this, *see Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 958-59 (Ind. 2005); *compare* Ind. Code §§ 34-20-2-1 (IPLA cause of action), 34-20-2-2(2) (contractual relations not required), 34-6-2.1-35 (consumer), 34-6-2.1-119 (manufacturer), 34-6-2.1-209 (user), *with* Ind. Code §§ 26-1-2-103(a, d) (buyer and seller), 26-1-2-105 (goods), 26-1-2-106 (sale), 26-1-2-318 (third-party beneficiaries), 26-1-2-313 (UCC express warranty), 26-1-2-314 (UCC implied warranty of merchantability); *see also Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 308 (Ind. Ct. App. 1989) (basis of the bargain).

in light of the legislative inaction as to the relationship between the UCC and the IPLA"—what the law calls legislative acquiescence, *id.*

The Potempas see *Bayer* as binding. Sitting in diversity, the court "must apply state law as [it] believe[s] the highest court of the state would apply it." *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 927 (7th Cir. 2024). This is straightforward when the state's highest court has addressed the issue but more delicate when it hasn't. *Id.* The court must undertake a broad inquiry of persuasive authority, *id.*, and will follow an intermediate appellate court holding unless there are persuasive reasons to decide otherwise, *id.* at 928; *see also id.* ("a federal court must be alert to indications that the highest court of the state might well reject the view of the intermediate appellate court"); *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1301-02 (7th Cir. 1995) (court is "not bound" if there are "good reasons for diverging from" state intermediate appellate court decisions).

The court approaches this subject with humility based on deeply-held principles of federalism, recognizing that this concerns a matter of state law, not federal law. In thrust, *Bayer* has it right; the court would not pretend to see it differently. It is perhaps just the Potempas who read too much into *Bayer* at the start. In a single paragraph, *Bayer* permitted a UCC-based express warranty claim—but, critically, one with allegations sounding in contract law rather than tort law—to proceed amid other IPLA claims. *Bayer*, 153 N.E.3d at 1190. As stated, that alone is not problematic and is perfectly consistent with longstanding Indiana law. *See* Ind. Code § 34-20-1-2; *Gunkel*, 822 N.E.2d at 153; *Fleetwood Enters.*, 749 N.E.2d at 495. Only when the Potempas read *Bayer* as permitting an express warranty claim to proceed in tort for product-caused physical harm,

which the opinion mentions in passing as an undecided question, do they invite the opinion to step out onto unstable ground. *Bayer* cannot be read that broadly.

Suppose though, for the moment, that the Potempas read it correctly. There are still good reasons to decline the idea that Indiana law permits warranty theories of recovery for personal injuries caused by products in the guise of a tort. For one, the IPLA says as much. The IPLA "governs all actions" (not just some) brought by a consumer against a manufacturer or seller for physical harm caused by a product—"regardless of the substantive legal theory or theories upon which the action is brought"—and thereby leaves no room for the UCC to work as an alternative form of this type or scope of tort. Ind. Code § 34-20-1-1; *see also* Ind. Code § 34-6-2.1-163 (defining "product liability action" the same). A UCC-based commercial claim can still exist, but not a tort theory dressed within the UCC. With the legislature speaking so plainly, the court listens. *See McGeshick v. Choucair*, 9 F.3d 1229, 1234 (7th Cir. 1993) (declining to follow intermediate interpretation "contrary to the clear intent of the statute").

For another, the Indiana Supreme Court has echoed this understanding of the IPLA, even as it has reserved the precise question. *See Kovach*, 913 N.E.2d at 197. The "legislature intended that the [IPLA] govern all product liability actions," *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002)—that is, to "govern all actions" for "physical harm caused by a product," *Kennedy*, 806 N.E.2d at 779. This view likewise aligns with Indiana's longstanding economic loss doctrine, where pure commercial loss is relegated to contract and to warranty, and where personal injury or damage to other property can be recovered in tort. *Gunkel*, 822 N.E.2d at 154-55; *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1091 (Ind. 1993).

What's more, the Indiana Supreme Court has acknowledged that panels of the Indiana Court of Appeals and federal district courts have long held that the IPLA subsumes tort-based product warranty claims. *See Kovach*, 913 N.E.2d at 197; *see, e.g.*, *Condon v. Carl J. Reinke & Sons, Inc.*, 575 N.E.2d 17, 18 (Ind. Ct. App. 1991) ("In Indiana, the theory of implied warranty in products liability actions has been superseded by the theory of strict liability."); *Masterman v. Veldman's Equip.*, 530 N.E.2d 312, 314 (Ind. Ct. App. 1988) (same); *Thiele*, 489 N.E.2d at 577-584 (same); *TLB Plastics v. Proctor & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1375 (Ind. Ct. App. 1989) (same).[3] The Potempas call *Bayer* dispositive, and as a reflection of the UCC's role for actions that sound in contract or commercial warranty the court agrees; but a survey of case law reveals that their reading of *Bayer* to justify a separate tort-based product action under the UCC contravenes the weight of diverse authority interpreting the legislature's intention for the IPLA. Indeed, it would be odd to assume that three distinguished jurists in *Bayer* reached the conclusion to permit a tort-based warranty theory to proceed in a product liability action without giving a nod to prior opinions from their Indiana colleagues seemingly reaching a different result. The court isn't inclined toward the unusual in reading the law.

For yet another reason, reading *Bayer* the way the Potempas do would mean that the Indiana Court of Appeals relied "particularly" on legislative acquiescence to permit a tort-based product warranty theory. *Bayer*, 153 N.E.3d at 1190. This makes little sense. First, this doctrine

[3] This presider has said the same thing, with others in chorus. *See supra*. At times, though not here, parties cite *Auto-Teria, Inc. v. Ahern*, 352 N.E.2d 774, 781-83 (Ind. Ct. App. 1976), and its reference to consequential damage recovery in Indiana Code § 26-1-2-715(2)(b), for the contrary proposition—that a UCC warranty theory could be used to recover in tort for personal injuries—but this opinion preceded the adoption of the IPLA in 1978, *see Gunkel*, 822 N.E.2d at 154-55; *see also* Ind. Code § 26-1-2-714(3) (limiting consequential damages to the "proper case").

works merely as an "auxiliary tool for use in interpreting ambiguous statutory provisions," and there's nothing ambiguous about the IPLA in its opening statement of its scope. *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 345 n.3 (1988); *see Jackson v. State*, 50 N.E.3d 767, 775 (Ind. 2016) (clear statutory language "moots the concept of legislative acquiescence"). Second, the doctrine would build on shifting sand rather than solid footing when courts have reached different interpretations of a statute, for who can tell at that point whether lawmakers have acquiesced to one view or the other. *See St. Mary's Med. Ctr., Inc. v. State Bd. of Tax Comm'rs*, 571 N.E.2d 1247, 1250 (Ind. 1991) (calling the doctrine "insoluble and useless" in this scenario). And third, legislative inaction would be a poor surrogate for legislative action. The IPLA in 1978 explicitly said it would "not apply to actions arising from or based upon any alleged breach of warranty," Ind. Code § 33-1-1.5-1 (1978). Even then, even with this language, Indiana courts held that the IPLA superseded a tort-based warranty theory for product liability, finding that the statute had been written on the basis of longstanding common law to this effect. *Thiele*, 489 N.E.2d at 583; *accord State Farm Fire & Casualty Co. v. Structo Div., King Seeley Thermos Co.*, 540 N.E.2d 597, 597 (Ind. 1989). In 1983, the Indiana General Assembly, writing on the slate of common law, struck that carve out from the IPLA, *see* Pub. L. No. 297-1983, 1983 Ind. Acts 1817, and twelve years later expressly coopted this broad view of the IPLA by making it govern all actions for physical harm caused by a product "regardless of the substantive legal theory," Ind. Code § 34-20-1-1; Pub. L. No. 278-1995, 1995 Ind. Acts 4051. The law has read this way ever since. The court takes the General Assembly at its latest word, whether that theory sounds in strict liability, negligence, or warranty in the form of a tort.

For a last reason, and though the court might have more to say on the subject, reading *Bayer* to reintroduce warranty as a tort theory for a consumer to recover damages for her personal injuries from a product would represent a marked step backward in the development of product liability law. For decades, evolution of the law has been to shake the shackles of such contract-based doctrines, and the attendant prerequisites, damage limitations, and defenses that can stand in the way, and to permit demonstrably injured plaintiffs the freedom to sue in tort when defective products cause personal injuries—for rather sound reasons. *See, e.g., Greenman v. Yuba Power Prods., Inc.*, 377 P.2d 897, 900-01 (Cal. 1963) (Traynor, J., majority); *Escola v. Coca Cola Bottling Co.*, 150 P.2d 436, 440-41 (Cal. 1944) (Traynor, J., concurring); *accord Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010). The IPLA accomplishes this very thing without the need to muck it up with an ill-fitting and retired substitute.

No one is saying a contract doctrine in Indiana isn't alive and well, for Indiana law protects rather robust contract norms, including for UCC-based claims in warranty for damages to the product or other pure commercial loss, but not a tort theory disguised in warranty for personal injuries or other tort damages to a consumer caused by products, not outside the IPLA. In short, how the Potempas read *Bayer* cannot possibly be what was meant; and, even if so, the court believes the Indiana Supreme Court would see it differently.[4] *See Green Plains*, 90 F.4th at 927. *Bayer* preserves a UCC-based express warranty claim for allegations that sound in contract law rather than tort law, just as it said.

[4] No one has asked the court to certify this question to the Indiana Supreme Court, and with humility the court believes the path is clear. *See State Farm Mut. Auto. Ins. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001).

That leaves but one question: whether the Potempas present a UCC-based warranty theory for pure commercial loss along with their proposed tort theory in warranty. The court cannot dismiss mere alternative theories on a Rule 12(b)(6) motion—one that might sustain a claim and one that would not—only a claim in the whole. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023); *Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

The court has not been directed by the Potempas to a plausible one on this record, not as argued today. Their claims plausibly sound in product liability and tort. They allege the Stryker medical device implanted in Ms. Potempa broke, causing her injuries and pain, and causing Mr. Potempa loss of consortium [10 ¶ 15-18]. Each warranty theory reiterates the personal injury to Ms. Potempa resulting from an alleged product defect and lost consortium [*id.* ¶ 45, 51, 56]. Neither their amended complaint nor their briefing, even after being challenged, expresses an intention to recover mere damage to the device or other pure commercial loss from a failure to conform to any warranty. Although their amended complaint refers generically to unspecified consequential and incidental damages, both UCC-based concepts, the Potempas never argue that they seek mere commercial loss (rather than tort recovery) in opposing the motion to dismiss, and the court works within the arguments that they present. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025). In fact, they seem desirous to retain a consortium claim, which presupposes that their warranty claims must sound in tort, not contract, else with their concession of the IPLA claims there would be no other basis in tort to preserve a consortium claim. *See Durham v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001)

(calling a consortium claim "derivative," and "[b]y this we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it").

Of course, to the extent the court has it wrong, and the Potempas wish to pursue express warranty or implied warranty of merchantability theories to recover commercial loss, they have the option to file a second amended complaint that plausibly alleges a basis in warranty for this scope of recovery, but they as consumers cannot use the UCC as a substitute for the IPLA to pursue tort recovery for physical harm from Stryker's product, no matter the legal theory.

For today, the statute of limitations bars the IPLA claims in counts 1 and 2. Although the Potempas need not have anticipated and pleaded around the statute of limitations, this amended complaint reveals such an action to be time-barred, as they concede. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). The IPLA also subsumes the amended complaint's tort-based warranty theories for product-caused harm to a consumer in counts 3-5, which become time-barred too (in addition to the lack of privity barring count 4). "If a cause of action is actually one for negligence or strict liability, but has been couched in terms of breach of warranty under the UCC solely to avoid the shorter statute of limitations under the [IPLA], the statute of limitations under the [IPLA] will apply." *B&B Paint*, 568 N.E.2d at 1019. Without a personal injury action sounding in tort, the consortium claim must be dismissed too.

CONCLUSION

For these reasons, the court GRANTS the motion to dismiss [14], DENIES AS MOOT the request for oral argument [16], and AFFORDS the Potempas leave to amend by October 16,

2026, albeit consistent with this opinion, else at that time the court will direct entry of final judgment for the defendants dismissing the case.

SO ORDERED.

September 30, 2026

*s/ Damon R. Leichty*
Judge, United States District Court